IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO.

Solomon Btesh,

        Petitioner,

v.

Isaac Btesh,

        Respondent.

_____/

## PETITION TO CONFIRM AND ENFORCE ARBITRAL AWARD

The Petitioner Solomon Btesh alleges as follows for his Petition to Confirm a Final Arbitration Award against Isaac Btesh ("Respondent"):

### I.
### NATURE OF THE ACTION

1. This action is brought pursuant to the Inter-American Convention on International Commercial Arbitration (referred to as "Inter-American Convention" or "Panama Convention"), codified at Chapter Three of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 301 *et seq.*, to confirm and enforce a final arbitral award. The Inter-American Convention incorporates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), codified in Chapter Two of the FAA, 9 U.S.C. §§ 201-208; *see also* § 301-307.

2. The arbitral award at issue (the "Arbitral Award") is a final, international commercial arbitration award made on September 8, 2023, and notified to the Parties on the same date. A certified copy of the Arbitral Award (with its attachments A through G) is attached hereto as composite Exhibit 1. The Arbitral Award was rendered in Miami Florida by the Beis Din of Florida, Inc. and was issued under *Halacha* Law. *Halacha* law is the collective body of Jewish religious laws and commandments derived from the Torah (the first five books of the Hebrew Bible) and the Talmud. *Halacha* law serves as the fundamental legal and ethical framework guiding the lives of all Orthodox Jews. The Beis Din of Florida Inc, which is located in Miami Dade County Florida, is a Rabbinical Court which serves its members as a forum for arbitrating disputes through the din torah process ("Rabbinical Court").

3. The Arbitral Award arises out of an agreement between the Parties dated January 20, 2020, pursuant to which the Parties agreed to arbitrate their disputes under *Halacha* Law. This agreement is further referred to and defined in paragraph 29 of this Petition as the "MultiBank Agreement".

4. The Arbitral Award was issued by three independent Arbitrators who are each ordained Orthodox Jewish Rabbis, referred to as *Dayanim* under *Halacha* law. The Arbitrators rendered the Arbitral Award in favor of the Petitioner and against the Respondent in all respects.

## II.

## THE PARTIES

5. The Petitioner Solomon Btesh is a citizen of Panama, the United States of America, and the United-Kingdom. The Petitioner resides in Miami Dade County Florida.

6. The Respondent Isaac Btesh is a citizen of Panama and the United Kingdom. Respondent maintains a residence in both Miami Dade County and Panama City, Panama.

### III.

### SUBJECT MATTER JURISDICTION AND VENUE

7.  This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the laws and treaties of the United States, specifically 9 U.S.C. §§ 203, 302.

8.  The majority of the parties to the arbitration agreement (further referred to and defined in paragraph 29 of this Petition as the "MultiBank Agreement) are citizens of Panama and the United States. In addition to the Petitioner and Respondent, the other parties to arbitration agreement are all citizens of Panama. Panama is a ratifying state of the Inter-American Convention[1] and the Organization of American States ("OAS").[2] Accordingly, pursuant to 9 USC § 305, this matter arises out of the Inter-American Convention.

9.  Venue is proper pursuant to 9 U.S.C. § 204, 203, and 302. Additionally, venue is proper based on 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

### IV.

### PERSONAL JURISDICTION

---

[1] *See*, repository of signatures and ratifications of the Inter-American Convention https://www.oas.org/juridico/english/sigs/b-35.html; Panama is the first state to ratify the Convention on 17 December 1975, the United States ratified on 27 September 1990.

[2] *See*, repository of signatures and ratifications of the OAS Charter and OAS Member States https://www.oas.org/en/member_states/default.asp.

10. On April 30, 2009, Respondent and his wife Bety Btesh purchased a residence in Miami Dade County located at 20201 E Country Club Drive Unit #310. ("Miami Home") On the same day, Respondent and his wife executed a Quit Claim Deed on the Miami Home to NMB Aventura Realty, Inc. (NMB Realty). Respondent was represented in these real estate transactions by an attorney licensed in Florida who resides and works in this Judicial District. ("Respondent's Florida Counsel).

11. The Quit Claim Deed expressly identifies NMB Realty as the "wholly owned company" of Respondent and his wife. NMB Realty is a for profit company organized under the laws of the Republic of Panama. It has held legal title to the Miami Home since December 2009. Respondent and his wife are the direct beneficial owners of NMB Realty.

12. Since 2009, Respondent has continued to use the Miami Home as his residence in Florida. During this time, he has travelled to Florida many dozens of times.

13. NMB Realty maintains bank accounts in this Judicial District ("NMB Bank Accounts"). Respondent controls the NMB Bank Accounts and uses these accounts to pay for the property taxes and other expenses associated with the Miami Home. Furthermore, on behalf of Respondent, Respondent's Florida Counsel pays the real estate taxes associated with the Miami Home and the operations of NMB Realty. In this capacity, Respondent's Florida Counsel acts as an agent for Respondent in this Judicial District.

14. Respondent also owns bank accounts in this Judicial District. He also is the owner of several securities accounts at a registered broker dealer within this Judicial District.

15. In addition to the Miami Home, Respondent also owns and operates an automobile that is registered under his name in the Florida Department of Motor Vehicles. Furthermore,

Respondent is the registered owner of several telephone numbers with areas codes that originate with this Judicial District.

16. Respondent is an active Member of Safra Synagogue in Miami Dade County. Respondent also holds a Permanent Seat at Temple Shul of Bal Harbor in Miami Dade County. Finally, Respondent is an active philanthropist in a charitable organization located in Miami Dade County.

17. Respondent is subject to general personal jurisdiction in this Court under Florida Statue section 48.193 (2) because he engages in substantial and not isolated activities within the state of Florida.

18. Respondent is subject to specific personal jurisdiction in this Court under Florida Statute section 48.193 (1)(a)(7) because he breached a contract in the State of Florida by failing to perform acts required by the contract to be performed in Florida. Specifically, as detailed in the Arbitral Award, Respondent failed to pay Petitioner in the State of Florida.

19. Alternatively, Respondent is subject to general personal jurisdiction in the State of Florida under *Fed R. Civ. Pro*. 4 (k)(2) because this action arises under Federal Law.

20. Respondent has sufficient minimum contact with the State of Florida to satisfy the Due Process requirements under the U.S. Constitution.

V.

**FACTUAL BACKGROUND**

A. **Arbitrability of Petitioner's Claims and the Underlying Dispute.**

21. Petitioner and Respondent are brothers. They have two sisters whose names are Raquel Btesh De Michaan, and Yvone Btesh De Snaider (collectively the "Btesh Siblings"). The

father of the Btesh Siblings was Alberto Salomon Btesh Hazzan ("Mr. Btesh Sr."). He died in Panama on December 17, 2019.

22. During his entire lifetime, Mr Btesh Sr. was a practicing member of the Orthodox Jewish Community. The Btesh Siblings are also practicing members of this Orthodox Jewish community. As members of this Community, Mr Btesh Sr. (during his lifetime) and the Btesh Siblings strictly follow *Halacha* Law.

23. On or around 1990, Mr. Btesh Sr. founded Multibank, Inc, and Multi Financial Group Inc., a financial institution organized under the laws of Panama and doing business in Central America. ("MultiBank"). Through the efforts of Mr Btesh Sr., MultiBank became a highly successful and profitable Bank in Central America. By the time of his death in December 2019, Mr. Btesh Sr. was a very wealthy man primarily because of his ownership interest in Multibank.

24. On or around 2012, Mr. Btesh Sr. began to suffer from Dementia and other neurological conditions. His conditioned worsened and, by the time of his death in December 2019, Mr. Btesh Sr. suffered from advanced dementia and other cognitive disorders.

25. In November 2019, while Mr. Btesh Sr., was suffering from advanced dementia, Respondent began to press his father to transfer his interest in MultiBank to himself and his sisters Yvonne and Raquel. Petitioner was unaware that Respondent was making these efforts. During this time, and without Petitioner's knowledge, Respondent eventually caused Mr. Btesh Sr. to transfer his shares in MultiBank to himself and his sisters Yvonne and Raquel.

26. While Respondent was exerting undue influence over Mr. Btesh Sr., he was simultaneously negotiating the sale of MultiBank to Banco de Bogota in Colombia. Petitioner was unaware that Respondent was secretly negotiating the sale of MultiBank to Banco de Bogota.

27. In March 2020, a few months after the death of Mr. Btesh Sr., Respondent caused the sale of MultiBank to Banco de Bogota in Bogota Colombia for the sum of US$428,000,000.00. Respondent kept the proceeds of the sale of MultiBank.

28. On or around the death of Mr. Btesh Sr. a dispute arose among the Btesh Siblings regarding their respective interest in MultiBank and their interest in the proceeds from the sale of MultiBank to Banco de Bogota.

29. On January 22, 2020, the Btesh Siblings (together with Fundación Arysa SA, and Fundación Joyvon SA, both of which are entities organized under the laws of Panama) executed an agreement in Panama regarding their respective interest in the proceeds of the sale of MultiBank to Banco de Bogota and their inheritance claims to their father's estate ("MultiBank Agreement"). As members of the Orthodox Jewish Community, the parties agreed in paragraph 16 of the MultiBank Agreement to an alternative dispute resolution method pursuant to *Halacha* law. The MultiBank Agreement was duly executed in Panama by the Parties, sisters Raquel and Yvonne, and by Fundación Arysa SA and Fundación Joyvom SA. The MultiBank Agreement was also witnessed in Panama by an attorney who is licensed in Florida and Panama and who represents the Respondent.

      **B.**    **The Arbitration Proceeding.**

30. Soon after the execution of the MultiBank Agreement, Respondent breached the agreement. Thereafter, pursuant to paragraph 16 of the MultiBank Agreement, Petitioner commenced an Arbitration proceeding under *Halacha* law in the Rabbinical Court.

31. The Rabbinical Court appointed the following three ordained Rabbis as arbitrators in this matter: Rabbi Avrohom E. Notis, Rabbi Moshe Yitzchok Bressler, and Rabbi David Markstein.

32. As required by *Halacha* Law, the Rabbinical Court notified the Respondent three times. Specifically, the Rabbinical Court notified Respondent in the following manner: 1) via correct[3] e-mail on June 12, 2023, June 20, 2023, and July 3, 2023, and 2) via DHL Courier on June 9, 2023, June 21, 2023, and July 10, 2023.

33. Respondent failed to respond to any of the Rabbinical Court's notifications.

34. As provided by *Halacha* Law, the Rabbinical Court proceeded with the arbitration. The Rabbinical Court reviewed and considered documentary evidence presented by the Petitioner and further considered testimonial evidence presented by the Petitioner.

    C.    **THE FINAL ARBITRAL AWARD.**

35. Following the review and consideration of the evidence presented, the Rabbinical Court rendered its Arbitral Award on September 8, 2023. The Arbitral Award is a Final non-appealable award under *Halacha* law and consists of fourteen pages of single-spaced text with seven exhibits. The Arbitral Award fully and finally disposes of all claims before the Rabbinical Court.

36. In the Arbitral Award, the Rabbinical Court decided and ordered, among other things, that:

    a. It has Jurisdiction to render the Arbitral Award.

    b. The transfer of the MultiBank shares from Mr. Btesh Sr. to Respondent was void.

    c. Upon the death of Mr. Btesh Sr., Petitioner inherited 50% of all his estate under *Halacha* law, which included the interest of Mr. Btesh Sr. in MultiBank.

    d. Respondent breached the MultiBank Agreement by failing to pay Petitioner in Miami Dade County Florida.

---

[3] For the benefit of Respondent, his correct email address is not identified in this Petition.

  e. Petitioner's claim was granted as detailed in the Arbitral Award.

  f. Respondent shall pay Petitioner the sum of US$134,950,000.00.

  g. The Parties (and their sisters) shall deliver copies of the Arbitral Award to certain representatives of Banco De Bogota (identified in the Arbitral Award) within 14 days of the Arbitral Award.

37. The Rabbinical Court ordered Respondent to pay Petitioner all sums due within 10 days of the Arbitral Award.

38. The Arbitral Award is Final and non-appealable and there are no further proceedings or motions relating to the Arbitral Award. Therefore, this Court should confirm the Arbitral Award against Respondent and in favor of Petitioner.

## VI.
## Applicable Law

39. This confirmation and enforcement Petition is brought pursuant to the Federal Arbitration Act ("FAA"), which provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. §§ 207, 302. Given that the Arbitral Award was notified to the parties on September 8, 2023, this Petition to confirm and enforce is timely.

40. The Arbitral Award is an "arbitral award arising out of a legal relationship . . .which is considered as commercial" and therefore falls squarely within the scope of the Inter-American Convention. *See* 9 U.S.C. §§ 202, 302. *See also Four Seasons Hotels and Resorts, B. V. v Consorcio Barr, S.A.,* 267 F. Supp. 2d, 1335, 1343 (S.D. Fla. 2003), *abrogated on other grounds* by *Four Seasons Hotel & Resorts, B. V. v. Consorcio Barr, S.A.,* 377 F.3d 1164, 1165 (11th Cir.

2004) (holding that "the goal of the [New York] Convention [whose relevant provisions are substantively similar to the Inter-American Convention's provisions] was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts . .") (citations omitted).

41. Article 4 of the Inter-American Convention provides as follows:

> An arbitral decision or award that is not appealable under the applicable law or procedural rules *shall have the force of a final judicial judgment.* Its execution or recognition may be ordered in the same manner as that of decisions handed down by national or foreign ordinary courts, in accordance with the procedural laws of the country where it is to be executed and the provisions of international treaties. Inter-American Convention, Art. 4 (emphasis added).

42. Under the Inter-American Convention and the FAA, a district court's role in reviewing an arbitral award is strictly limited: "The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. §§ 207, 302 (emphasis added); *see also Four Seasons,* 267 F. Supp. 2d at 1342. Thus, pursuant to § 207 of the FAA and Article 5 of the Inter-American Convention, a court *must* recognize and confirm an arbitral award under the Inter-American Convention unless one of seven enumerated grounds exist, none of which are present here. *See* 9 U.S.C. §§ 207, 302; Inter-American Convention, Art. 5.

43. In light of the Inter-American Convention's "general pro-enforcement bias," the party opposing confirmation or enforcement of an arbitral award bears the burden of establishing a basis to not enforce the Arbitral Award. *See Four Seasons,* 267 F. Supp. 2d at 1343. Because no such basis is applicable in this case, the Court should confirm the Arbitral Award in all Respects so Petitioner may seek enforcement of the Arbitral Award.

## VII

## **RELIEF REQUESTED:**

## **RECOGNITION AND ENFORCEMENT OF ARBITRAL AWARD**

44.     On September 8, 2023, the Rabbinical Court rendered its unanimous Arbitral Award in favor of the Petitioner and against the Respondent. The Arbitral Award was notified to the parties on the same date.

45.     In the Arbitral Award, the Rabbinical Court awarded the Petitioner the sum of US$134,950,000.

46.     The Arbitral Award is final and binding. The Arbitral Award has not been set aside.

47.     The Respondent has not paid the amounts due under the Arbitral Award.

48.     Pursuant to 9 USC § 207 and 301 and the Inter-American Convention, any party to the Arbitration Proceeding may seek confirmation and enforcement of the Arbitral Award within three (3) years after the Arbitral Award was made.

49.     None of the grounds for refusal or deferral of recognition or enforcement of the Arbitral Award specified in the Inter-American Convention is present in this case.

WHEREFORE, the Petitioner Solomon Btesh respectfully requests that this Court enter an Order of Final Judgment : (1) confirming and enforcing the Arbitral Award in the United States as a Judgment of this Court; (2) ordering Respondent to pay Petitioner the sum of US$134,950,000.00 plus post- judgment interest at the applicable rates ; (3) retaining jurisdiction over this matter through the entry of any judgment and issuance of any and all Orders necessary for the Petitioner to enforce this Final Judgment against Respondent; and (4) granting Petitioner any such further relief as the Court may deem just and proper.

Dated this __27_____ of September 2023.

By: *Carlos F. Concepcion*
**Carlos F. Concepcion, FCIArb**
Florida Bar No 386730
*Board Certified International Litigation & Arbitration*
**Concepcion Disputes PA**
Citigroup Center
201 S. Biscayne Blvd., Suite 2800
Miami, Fl. 33131
www.cfclaw.com
cconcepcion@cfclaw.com
Office: 305-444-6669